IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CR-08-220-E-BLW |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| JORGE LUIS MARTIN-RAMIREZ, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## INTRODUCTION

The Court has before it Defendant Jorge Luis Martin-Ramirez's Motion to
Suppress (Docket No. 46).  The Court heard testimony and arguments of counsel
concerning this motion on March 26, 2009.  As explained in further detail below,
after considering the briefs and arguments of counsel, the Court denies Defendant
Jorge Luis Martin-Ramirez's Motion to Suppress.

## BACKGROUND

On August 28, 2008, an Indictment was filed with this Court charging
Defendant Martin-Ramirez with conspiracy to possess and distribute
methamphetamine and possession with intent to distribute methamphetamine.  A
Superseding Indictment was filed in November of 2008 changing the dates of the

**Order - Page 1**

conspiracy charge, adding another charge against one of Martin-Ramirez's co-defendants, and adding another defendant.

The charges against the Defendant relate to a drug transaction which took place on July 24, 2008.  The Government alleges that an undercover officer, Detective Bustos, had arranged to purchase a large quantity of illegal drugs from Jorge Briseno, a co-defendant in this case.  It was agreed that Bustos, who lived in Boise, and Briseno, who lived near Salt Lake City, would meet at the Love Truckstop on I-84 – a point roughly halfway between Boise and Salt Lake City – to deliver the drugs and complete the transaction.  Presumably to establish a connection that would lead to large drug transactions in the future,  Briseno told Bustos during their discussions that he was going to bring to the meeting his source for illegal drugs – his "compa."

Detective Bustos exchanged several phone calls with Briseno on July 24 as they worked out the details of the exchange.  Briseno was apparently already driving to the meeting location during several of these calls, because Bustos could hear road noise in the background.  During these phone conversations, Briseno repeatedly used the word "we" rather than "I," in Spanish, indicating to Bustos that he was accompanied by one or more persons.  Bustos also concluded that Briseno was accompanied by his "compa," because there was at least one occasion during

**Order - Page 2**

these last few phone calls when Briseno sought and obtained approval for some

modifications of the deal from someone who was in the car with him.

When Bustos arrived at the truckstop, he saw Briseno outside of the car he

said he would be driving.  However, there were no other individuals in close

proximity to Briseno.  After Briseno showed Bustos the methamphetamine, Bustos

told him that he needed to go out to his truck to get the buy money.  Bustos

indicated that he watched Briseno immediately walk into the fast food area of the

truckstop, walk up to one of the tables, and engage in a conversation with

Defendant Martin-Ramirez.  Briseno then left the table and was almost

immediately arrested.

Detective Bustos further testified that when Briseno was arrested, he

observed Martin-Ramirez engage in suspicious behavior.  First, Martin-Ramirez

and another co-defendant, Izarraga-Ponce, had started to exit the fast food area,

but when they saw Briseno being arrested they immediately walked back inside the

fast food area.  Second, while all the other patrons of the restaurant were staring

out at the flashing police lights and commotion accompanying Briseno's arrest,

Martin-Ramirez was sitting at a table in the restaurant looking down at the table.

Bustos perceived this to be an attempt to look inconspicuous.  Martin-Ramirez and

Izarraga-Ponce were then arrested.  The police did not have an arrest warrant for

**Order - Page 3**

any of the defendants arrested on July 24.

After Martin-Ramirez was transported to a police station, he was read his Miranda rights, in Spanish, and interrogated. According to Detective DeLeon's testimony, Martin-Ramirez stated he understood his rights and agreed to talk with the officers. He initially denied any involvement in or knowledge of drug trafficking. Martin-Ramirez alleges that after his initial denial, the interrogating officers then threatened that if he did not "talk" he would spend fifteen years in federal prison. He alleges that by "talk," he understood the officers to mean to confess guilt to the crime as charged. Detective DeLeon and Detective Garcia testified that the interrogating officers made no such threats and only mentioned that if Defendant wanted to cooperate, such cooperation would be taken into consideration by the Prosecutor, but that they could make no promises to him. Additionally, the detectives testified that although they advised Defendant of the potential sentence for the crime he was being charged with, it was qualified by statements that the Defendant would have to be found guilty of the charge first. Defendant Martin-Ramirez then made incriminating statements to the interrogating officers.

**Order - Page 4**

# ANALYSIS

## I.  Unlawful Seizure

The Fourth Amendment protects the right to be secure in one's person against unreasonable seizures.  In a warrantless arrest, there must be probable cause indicating that a crime has been, or is being, committed.  *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).  The standard for probable cause is not onerous and merely asks, "whether, under the totality of the circumstances, a prudent officer would have believed that there was a fair probability that [the defendant] committed a crime."  *U.S. v. Collins*, 427 F.3d 688, 691 (9th Cir. 2005).

Further, the "prudent officer" standard allows courts to consider the experience and expertise of the particular officer or officers involved.  *U.S. v. Valencia-Amezcua*, 278 F.3d 901, 906 (9th Cir. 2002).  For instance, a trained narcotics officer may "perceive meaning from conduct which would otherwise seem[] innocent to the untrained observer" and courts are allowed to account for that ability to draw significance from seemingly insignificant behavior.  *Id*.  Additionally, in determining what a prudent officer would have believed, the relevant inquiry is what information the officers have at the time of the arrest; facts discovered after the arrest are irrelevant.  *Collins*, 427 F.3d at 691.

A person's mere presence with someone suspected of illegal activity is

insufficient, in itself, to give rise to probable cause to arrest the person.  *U.S. v. Soyland*, 3 F.3d 1312, 1314 (9th Cir. 1993).  In *Soyland*, the defendant was a passenger in a car that was stopped by immigration agents.  *Id*.  When the driver got out of the car, the agents thought they smelled drugs and requested permission to search the car and found drug paraphernalia and marijuana.  *Id.*  Although the agent had not attributed any of the drug smells to the defendant, the agent then searched the defendant.  *Id*.  The Ninth Circuit determined that the presence of the defendant with the driver was insufficient probable cause to support the arrest and search of the defendant.  *Id*.

In contrast, where three men were riding in a car containing bags of cocaine behind the back-seat armrest that was accessible to all three men, there was probable cause to assume that any of the three were engaged in the illegal activity of possession.  *Maryland v. Pringle*, 540 U.S. 366, 372-73.  The Court in *Pringle* determined that "drug dealing [is] an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him."  *Id*. at 373.  The Ninth Circuit has also stated that "where the police's observations give them a reasonable belief that the observed person is a part of the criminal enterprise, then the probable cause to arrest will extend to him as well."  *U.S. v. Del Vizo*, 918 F.2d 821, 826 (9th Cir. 1990).  Therefore, as stated in *Pringle*

**Order - Page 6**

and *Del Vizo*, probable cause to arrest exists in a situation where the officer reasonably believes the person is a part of a drug dealing enterprise.

If it is determined that the officers lacked probable cause to arrest Martinez-Ramirez, any evidence discovered as a result of that arrest may be inadmissible because it is "fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963). However, not all evidence is excluded just because "it would not have come to light but for the illegal actions of the police." *Id*. The inquiry for a court is, given the initial illegality, whether the evidence was obtained by "exploitation of that illegality or . . . by means sufficiently distinguishable to be purged of the primary taint." *Id*. at 488. It does seem clear, however, that Martinez-Ramirez's confession was obtained as a direct result of his arrest. Therefore, it must be suppressed if the arrest violated his Fourth Amendment rights.

Defendant argues the federal agents in this case lacked probable cause to arrest him. He argues that the only information known to the agents at the time of his arrest was that he was seen talking to an alleged drug dealer at a fast foot area of a truck stop. Defendant correctly argues that this, standing alone, does not constitute probable cause to arrest him for drug trafficking. Defendant further argues that, as his arrest was illegal, any confessions or evidence obtained as a

**Order - Page 7**

result of the arrest are not admissible because they are "fruit of the poisonous tree."

However, the Defendant oversimplifies the facts known to the officers and ignores other significant information which they had in their possession.  First, Bustos had ample reason to believe that Briseno was accompanied to the truck stop by his supplier, or "compa."  During their negotiations to set up the time and place for the drug transaction, Briseno told Bustos that he would bring his supplier so they could meet.  The conversations which Bustos had with Briseno while the latter was driving to the truck stop from Utah reaffirmed this understanding.  Briseno used the Spanish pronoun for "we," rather than "I," during that conversation.  It was also apparent that, with regard to last minute changes in the transaction, Briseno was consulting with and obtaining approval from someone else in his vehicle.  In that context, Briseno's actions in showing Detective Bustos the methamphetamine and then walking directly over to Defendant Martin-Ramirez and talking to him, takes on a very different complexion.  Finally, after  Briseno was arrested, Martin-Ramirez, unlike everyone else in the area, ignored the commotion and, in Detective Bustos's opinion, was attempting to blend in and look inconspicuous.

Many of these facts may appear innocent to an untrained observer. However, the arresting officers are permitted to bring their expertise and

**Order - Page 8**

experience to bear on the question of whether there was probable cause to arrest Martinez-Ramirez.  In this case, Detective Bustos had reason to believe that Briseno was accompanied by his source of supply.  This reasonable belief, in addition to Briseno's approaching Martinez-Ramirez immediately after showing Bustos the drugs and Martinez-Ramirez's suspicious behavior when Briseno was arrested, allowed Bustos to conclude, based upon his expertise and experience, that Martinez-Ramirez was involved in Briseno's drug trafficking activities.  The Court concludes that, under the totality of the circumstances known to Detective Bustos, a prudent officer would have believed that there was a fair probability that Martinez-Ramirez had committed a crime.  No more is required to support a finding of probable cause.  *U.S. v. Collins*, 427 at 691.  Accordingly, the Court finds that Martinez-Ramirez's arrest did not violate his Fourth Amendment rights. Therefore, the evidence obtained as a result of the arrest will not be suppressed.

## II.    Voluntariness of Confession

Defendant argues his statements to police interrogators were involuntary and the result of improper and coercive police actions in violation of his due process rights under the Fifth and Fourteenth Amendments and his Fifth Amendment privilege against self incrimination.  Therefore, Defendant contends all his statements, and any evidence discovered as a result of such statements, should be

suppressed.

Due process requires that a defendant's confession must be voluntary.  *See Jackson v. Denno*, 378 U.S. 368, 376 (1964); *Commonwealth of N. Mariana Islands v. Mendiola*, 976 F.2d 475, 484 (9th Cir. 1992).  To be voluntary, the defendant's confession must be "the product of a rational intellect and a free will." *Mincey v. Arizona*, 437 U.S. 385, 398 (1978)(citing *Jackson v. Denno*, 378 U.S. 368, 376 (1964))(no rational intellect or free will exists where a defendant is confused, unable to think clearly, and incoherent because of extreme pain).

Additionally, there must be coercive police activity in order for a defendant's confession to be involuntary within the meaning of the Due Process Clause of the Fourteenth Amendment.  *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).   A court must consider the totality of the circumstances to determine whether the confession was coerced by "psychological coercion or by improper inducement so that the suspect's will was overborne."  *U.S. v. Harrison*, 34 F.3d 886, 890 (9th Cir. 1994).  Coercive police activity includes threats made by police officers that a defendant will receive harsher treatment by a court or a prosecutor if he exercises his right to remain silent.  *Id*. at 897-92.  This is because the Fifth Amendment secures "the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for

such silence." *Malloy v. Hogan*, 378 U.S. 1, 8 (1964).  However, the Ninth Circuit has held that coercive police activity does not include an interrogating officer representing to a suspect that his cooperation will be made known to the prosecutor.  *See United States v. Glasgow*, 558 (9th Cir. 1971).

Other factors that a court may take into consideration to determine whether a confession is voluntary or "whether a defendant's will was overborne by the circumstances surrounding the giving of a confession" are: 1) the time between arrest and arraignment, 2) the defendant's knowledge of the nature of the charged offense, 3) whether the defendant was advised or knew of his right to remain silent, 4) whether the defendant was advised or knew of his right to assistance of counsel, and 5) whether the defendant had counsel when he was questioned and gave the confession.  *U.S. v. Gamez*, 301 F.3d 1138, 1144 (9th Cir. 2002).  Additionally, if the defendant is a foreign national additional factors must be taken into account, including

> (1) whether the defendant signed a written waiver; (2) whether he was read his rights in his native language; (3) whether he appeared to understand those rights; (4) whether he had the assistance of a translator; (5) whether his rights were explained painstakingly; and, (6) whether he had experience with the American criminal justice system.

*Id*.

Whether a defendant's "will was overborne" can also depend on the

characteristics of the defendant.  *Yarborough v. Alvarado*, 541 U.S. 652, 667-68.

For example, defendant's lack of education coupled with facts that the defendant's

"faculties were impaired by inadequate sleep and food, sickness, and long

subjection to police custody with little or no contact with anyone other than

police," can be factors in determining whether a defendant's confession was

voluntary.  *Clewis v. Texas*, 386 U.S. 707, 712 (1967).  In addition, if a defendant

has had no previous experience with criminal law coupled with facts that she was

threatened with adverse consequences for lack of cooperation and had no friend or

advisor during the time of confession, are factors that should be considered in

determining whether a defendant's confession was voluntary.  *Lynumn v. Illinois*,

372 U.S. 528, 534 (1963).

Finally, the burden to prove voluntariness rests with the prosecution and

must be proven "at least by a preponderance of the evidence."  *Twomey*, 404 U.S.

at 489; *see also Harrison*, 34 F.3d at 890.  If the prosecution fails to meet its

burden of proof, the confession, along with any evidence obtained through police

exploitation of information obtained from the confession,  must be suppressed as

"fruit of the poisonous tree."  *See Wong Sun v. United States*, 371 U.S. 471, 487-88

(1963).

In this case, Defendant primarily argues the confession was involuntary

because the police threatened that if he did not "talk" he would receive worse treatment from the prosecutor.  The Government contends no such threat was made.  Rather, the interrogating officers testified that Defendant was told that if he cooperated the officers would let the prosecutor know.  As shown in *Glasgow* a statement that any cooperation would be communicated to the prosecutor is permissible and does not destroy the voluntariness of incriminating statements.

Defendant did not put on any witnesses or evidence that disputed the officers' testimony that the Defendant was never threatened with adverse consequences if he were to remain silent.  Therefore, the undisputed record establishes that the officers only (1) advised Defendant that any cooperation would be made known to the prosecutor and (2) informed him of the criminal penalties he would face if convicted.  The officers conduct cannot be described as coercive police activity.

As noted above, the Court, in determining voluntariness,  may take into account other relevant considerations.  However, Defendant did not offer any evidence suggesting that those considerations exist in this case.  For example, the Defendant did not offer any evidence suggesting that the his lack of education or intelligence impacted the voluntariness of his confession.  Nor was evidence presented suggesting that the Defendant's status as a foreign national or his lack of

**Order - Page 13**

fluency in English affected the validity of his confession.  The interrogating officers testified that Defendant was read his rights and interrogated in Spanish, his native language, and that he appeared to have no difficulty understanding his rights or the questions put to him.

In summary, the evidence before the Court overwhelmingly supports the conclusion that the Defendant's confession was voluntary.  Accordingly, the motion to suppress the Defendant's confession will be denied.

## CONCLUSION

NOW THEREFORE IT IS HEREBY ORDERED that Defendant's Motion to Suppress (Docket No. 46) shall be, and the same is hereby, DENIED.

DATED:  **April 2, 2009**



Honorable B. Lynn Winmill
Chief U. S. District Judge

**Order - Page 14**